**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Law Offices of Todd M. Friedman, P.C.**
**21550 Oxnard Street, Suite 780**
**Woodland Hills, CA 91367**
**Phone: 323-306-4234**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
**Attorneys for Plaintiff**

*Attorneys for Plaintiff, Sarah Som-Dotson and all others similarly situated*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH SOM-DOTSON, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>JUICE BEAUTY, INC.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3)  Common Law Fraud<br><br>(4)  Unjust Enrichment<br><br>**Jury Trial Demanded** |

Plaintiff SARAH SOM-DOTSON ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1.    This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*, common law fraud, and unjust enrichment, resulting from the illegal actions of Defendant, in intentionally labeling its skincare products with false and misleading claims that they are oil-free, when Defendant's products contain numerous oils. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendant does business, <u>inter alia</u>, in the Central District of California.

## PARTIES

4.      Plaintiff is an individual who was at all relevant times residing in Reseda, California.

5.      On information and belief, Defendant is a Delaware corporation whose principal place of business is located in San Rafael, California.

6.      At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of skincare products.

## FACTS COMMON TO ALL COUNTS

7.      Defendant manufactures, advertises, markets, sells, and distributes skin care products throughout California and the United States under brand name "Juice Beauty."

8.      During the Class Period the following list of products (the "Products") were advertised as oil-free when they in fact contained the listed oils:

a.      Oil-Free Moisturizer: squalane, caprylic/capric triglyceride;

b.      SPF 30 Oil-Free Moisturizer: caperylic/capric triglyceride, mandarin oil containing limonene, petitegrain oil containing myrcene;

c.    Deluxe-Oil-Free    Moisturizer:    squalane,    coconut    alkanes, caprylic/capric triglyceride;

9.    During the Class Period Plaintiff purchased at least one of the Products.

10.    Plaintiff's most recent purchase was during or about September, 2020.

11.    All of the Products contain oils, but Defendants intentionally advertise and label the Products as oil-free.

12.    Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of ingredients in those products.

13.    By making false and misleading claims about the ingredients contained in their products Defendant impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

14.    Therefore, Plaintiff has been deprived of her legally-protected interest to obtain true and accurate information about his consumer products as required by California and Federal law.

15.    As a result Plaintiff has been misled into purchasing products she would not have otherwise purchased.

16.    Oil is a term that describes a material that is both hydrophobic and lipophilic. Oil can also be classified by the polarity of the material. Oils can be

wholly non-polar such as hydrocarbons, or polar such as fatty acids.  Oil comprises the following chemical functional groups:[1]

    a. hydrocarbons (alkanes, alkenes) —such as squalane commonly sold as squalane oil;

    b. triglycerides—such as glycerol tristearate also known as stearin;

    c. esters—such as ester oil;

    d. fatty acids—such as palmitic acid;

    e. certain silicones—such as alkyl dimethicone

    f. fatty alcohols-sterols like cholesterol

17.    All of the above functional groups can be characterized by the same physical properties commonly observed by laypersons including being less dense than water, being more viscous than water, and feeling slick or slippery to the touch.

18.    The following is a structural diagram of squalane:



-alkane

19.    Squalane is defined as a hydrocarbon. As shown in the diagram in paragraph 18 above, squalane contains the alkane functional group. It would be

[1] Tony O'Lenick, Polar vs. Nonpolar oils, 2008.
https://www.cosmeticsandtoiletries.com/research/chemistry/17390254.html

defined as a non-polar oil. The compound has a density of 0.810 g/mL, compared to water's 1g/mL.

20.    The following is a structural diagram of caprylic triglyceride:



-triglyceride

-alkane

21.    Caprylic/capric triglycerides are defined as triglycerides. As shown in the diagram in paragraph 20 above, caprylic/capric triglycerides contain triglyceride and alkane functional groups. They would be defined as polar oils. The compounds have a density of 0.910 g/mL compared to water's 1g/mL.

22.    The following is a structural diagram of limonene:



-alkane

-alkene

23.    Limonene is defined as a hydrocarbon. As shown in the diagram in paragraph 22 above, Limonene contains the alkane and alkene functional groups  It would be defined as a non-polar oil. The compound has a density of 0.841 g/mL compared to water's 1g/mL.

24.    The following is a structural diagram of myrcene:



-alkane

-alkene

25.    Myrcene is defined as a hydrocarbon. As shown in the diagram in paragraph 24 above, myrcene contains the alkane and alkene functional groups. It

would be defined as a non-polar oil. The compound has a density of 0.794 g/mL compared to water's 1g/mL.

26.    The following are examples of the Products' labeling that explicitly claim to be oil-free when they contain oils:




27.    Plaintiff purchased Defendant's products because Defendant's packaging claims that their products are oil-free.

28.    Plaintiff would not have been able to understand that the Products contained oils without an advanced understanding of chemistry.

29.    Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as oil-fee, Plaintiff could not have known that the Products contained oils.

30.    Plaintiff was unaware that the Products contained oils when she purchased them.

31.    Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as oil free.

32.    Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

33.    Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "Oil-Free" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained oils unless Defendant expressly told them.

34.    Defendant employs professional chemists to create the chemical flavor formulas of Defendant's products. Therefore, Defendant through its employees knew or should have known that the Products contained oils and that by labeling the Products as oil-free they were deceiving consumers.

35.    On information and belief, Defendants through their employees did know that the Products contained oils, but chose to include "oil-free" labeling because they did not believe their customers were well educated enough to know the difference.

36.     As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

     a.     Lost money;

     b.     Wasting Plaintiff's time; and

     c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

37.     Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of this Complaint through to the date of class certification.

38.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of this Complaint through to the date of class certification.

39.     Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this

matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

40.    The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

41.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

42.    There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

    a.    Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "oil-free" on the front of the Products' packaging;

b.      Whether the Class and Sub-Class members were informed of the oils contained in the Products;

c.      Whether the Products contain oils;

d.      Whether Defendant's conduct was unfair and deceptive;

e.      Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.      Whether the statement "oil-free" is misleading or false;

g.      Whether there should be a tolling of the statute of limitations; and

h.      Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

43.    As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

44.    Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

46.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

47.    The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

48.    Plaintiff's claims and injuries are identical to the claims and injuries of all class and sub-class members, because all claims and injuries of all class and sub-class members are based on the same false labeling, and same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products were oil-free,  when in reality the Products contained oils.

49.    Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

50.    The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

### FIRST CAUSE OF ACTION
### Violation of the California False Advertising Act
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

52.    Plaintiff incorporates by reference each allegation set forth above.

53.    Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

54.    California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

55.    Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products advertised to be oil-free fully knowing the Products contained oils, and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

56.    Specifically, Defendant wrote on the packages of these Products that they were oil-free.

57.    Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

58.    As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.   Plaintiff reasonably relied upon Defendant's representations regarding the Products, namely that they were oil-free.   In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Products.   In turn Plaintiff and other Class Members ended up with skincare products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

59.    Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

60.    Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products would be oil-free.

61.    Defendant knew that the Class Products did in fact contain oils.

62.    Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained oils contrary to the Products packaging.

63.    The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.   Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.   Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION
### Violation of Unfair Business Practices Act
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

64.    Plaintiff incorporates by reference each allegation set forth above.

65.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.   Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.   A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.   Furthermore, the "act or practice" aspect of the statutory

definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

66.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

67.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

68.    Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

69.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class

Products were oil-free, in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained oils, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving ingredients said to be excluded from a product. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

70.    Finally, the injury suffered by Plaintiff and members of the Class and Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, falsely represented that Class Products would be oil-free, the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products contained oils, including intentionally mislabeling the Products by labeling them as oil-free. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase products containing oils. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

71.    . Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

72.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

73.    The test for "fraud" as contemplated by California Business and

Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

74.     Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they were oil-free even though the Products contained oils. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

75.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as oil-free when the Products contained oils.

76.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

### UNLAWFUL

77.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

78.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as oil-free, when the Products contained oils.

79.     Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and

Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

80.    These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

81.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## THRID CAUSE OF ACTION
## COMMON LAW FRAUD

82.    Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

83.    Through its false statements on the Products' packaging that the Products are oil-free, Defendant made false statements of material fact.

84.    At the time Defendant made its statements that the Products were oil-free to Plaintiff, it knew, or reasonably should have known, that the statements described above were false.

85.    At the time Defendant made the statement to Plaintiff, it intended to induce Plaintiff to purchase the Products.

86.    Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products contain oils.

87.    As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm and

damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

88.    Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

89.    Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

90.    Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statement that the Products are oil-free.

91.    Defendant's retention of the revenue it received from Plaintiff, the Class, and the Sub-Class is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, the Class, and the Sub-Class, because they would not have purchased the Products if they knew the Products contained oils.

92.    Defendant's unjust retention of the benefits conferred on it by Plaintiff, the Class, and the Sub-Class entitles the Plaintiff, the Class, and the Sub-Class to restitution of the money they paid to Defendant for the Products.

## MISCELLANEOUS

93.    Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

94.    Plaintiff requests a trial by jury as to all claims so triable.

# PRAYER FOR RELIEF

95.    Plaintiff, on behalf of herself and the Class, requests the following relief:

(a)    An order certifying the Class and appointing Plaintiff as Representative of the Class and Sub-class;

(a)    An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(b)    An order requiring JUICE BEAUTY, INC., at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(c)    An order requiring JUICE BEAUTY, INC. to engage in corrective advertising regarding the conduct discussed above;

(d)    Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of mislabeled Class Products during the relevant class period;

(e)    Punitive damages, as allowable, in an amount determined by the Court or jury;

(f)    Any and all statutory enhanced damages;

(g)    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h)    Pre- and post-judgment interest; and

(i)    All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

Dated:  October 13, 2020          Respectfully submitted,

                                  LAW OFFICES OF TODD M. FRIEDMAN , PC

                                  By: /s Todd. M. Friedman
                                  _____
                                       TODD M. FRIEDMAN, ESQ.
                                       Attorney for Plaintiff SARAH SOM-
                                  DOTSON